JESSE JONES, A/K/A QUINCY THOMAS SIMPSON, A/K/A JACK SIMPSON, A/K/A JESSE NAPCHIN, Petitioner v COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 32841-84
United States Tax Court
T.C. Memo 1991-28; 1991 Tax Ct. Memo LEXIS 22; 61 T.C.M. (CCH) 1721; T.C.M. (RIA) 91028; January 24, 1991, Filed *22 Decision will be entered for the respondent. Jesse Jones, Jr., pro se. Leroy D. Boyer and Cathleen A. Jones, for the respondent. GERBER, Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's 1983 Federal income tax in the amount of $ 1,819,310.95, and additions to tax as follows: Sec.
Sec.
Sec.
Sec.
6651(a)(1) [1]
6653(a)(1)
6653(a)(2)
6654
$ 454,827.75
$ 90,965.55
*
$ 111,451.49
The issues presented for our consideration are: 1. Whether petitioner had unreported income for the 1983 taxable year in the amount determined by respondent; 2. Whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file an income tax return *23 for the 1983 taxable year; 3. Whether petitioner is liable for the addition to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations; 4. Whether petitioner is liable for the addition to tax under section 6654 for failure to pay estimated income tax; and 5. Whether petitioner is liable for the self-employment tax under section 1401. FINDINGS OF FACT None of the facts have been stipulated. The case was submitted on oral testimony and evidence submitted at trial. Petitioner Jesse Jones, a/k/a Quincy Thomas Simpson, a/k/a Jack Simpson, a/k/a Jesse Napchin, was incarcerated at the Federal Correctional Institution in El Reno, Oklahoma, at the time his petition in the present case was filed. Petitioner has never filed a Federal income tax return with the Internal Revenue Service. The District Director of the Internal Revenue Service, Oklahoma City, prepared and filed a substitute return for petitioner's 1983 taxable year. Respondent made a termination assessment against petitioner for the period January 1, 1983, through October 13, 1983, and issued a notice of deficiency on June 14, 1984, for the entire 1983 taxable year. Petitioner *24 timely petitioned this Court for redetermination of respondent's deficiency determination and additions to tax. The deficiency and additions to tax are predicated on respondent's determination that petitioner failed to report income received from his cocaine trafficking activity during the 1983 taxable year. During March 1983, petitioner became the subject of a joint task force investigation which involved the Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Tulsa County Sheriff's Office, and Tulsa Police Department (Special Investigations Division) for violation of the Controlled Substances Act and various Federal firearm statutes. During May 1983, Roy L. Dunn (Dunn) contacted investigators and explained that he wanted to provide details about petitioner's narcotics business. Dunn informed investigators that he was involved in the narcotics business and had occasionally purchased cocaine from petitioner. Dunn detailed a transaction in which petitioner purchased 42 kilograms (kilos) of cocaine during January 1983 at the residence of an associate. Dunn informed investigators that prior to the purchase of the 42 kilos, petitioner went to the North Side *25 State Bank and obtained $ 70,000 from his safe deposit box. Around the time that Dunn agreed to voluntarily provide information to the task force, Dunn had been arrested and charged with arson of an automobile, possession of cocaine, possession of a firearm, and pointing a deadly weapon. Dunn was compensated by the Federal Government for his assistance, and it appears that Dunn cooperated with the investigators to receive leniency with respect to the charges pending against him. With respect to the charge of arson, bond was initially set at $ 20,000 but was reduced to $ 2,000. Dunn was not tried on the arson charge; however, Dunn was subsequently convicted for committing a double homicide arising out of a drug transaction and is serving two life sentences in prison. During November 1983, the investigators interviewed Christopher Grant (Grant), another informant and associate of petitioner, regarding petitioner's January 1983 purchase of cocaine. According to Grant, Danny Hilderbrand (Hilderbrand), [2] manager of the Mingo Valley Mini-Storage, informed him that his son had discovered some drugs in a mini-storage locker. Hilderbrand contacted Grant and informed him about the drugs *26 his son had located in the mini-storage. Grant obtained a portion of the drugs and took the drugs to various sources for identification. Subsequently, the drugs were identified as cocaine. This cocaine had been brought into the country from South America. After an investigation, it was determined that Lewis Stallings, a pilot, brought more than 2,000 kilos of cocaine into the country over a 5-year period. Stallings was convicted for bringing the cocaine into the country. Grant sold approximately 1 kilo of this cocaine to petitioner for $ 75. Petitioner expressed an interest in purchasing additional cocaine in the future. Grant informed the investigators that petitioner subsequently purchased five suitcases containing approximately 45 kilos of cocaine from Danny Hilderbrand for $ 5,000 during January 1983. Grant accompanied Jones to the mini-storage facility and facilitated the transaction by introducing petitioner to Hilderbrand. While the transaction was taking place, the renter of a mini-storage observed the men in the storage area and became suspicious after it appeared that the men in the storage facility were shaking locks and checking doors. The owner contacted Hilderbrand's *27 wife to express her concerns. After the purchase had been made, petitioner and Grant, realizing that they had been observed, deviated from normal routes away from the scene to avoid surveillance. Investigators believed petitioner had purchased and resold 42 kilos of cocaine based on the informants' representations and petitioner's accumulation of wealth during 1983. He built a metal building behind his body and fender shop and a swimming pool. He bought several lots adjacent to his property and a house across the street from his property. He bought several cars. He purchased a tractor in the name of Darlene Byrd for $ 12,600 in cash. He purchased a mobile home for approximately $ *28 37,000 in cash in the name of Darlene Byrd. In addition to his body shop, petitioner also owned and operated a nightclub. Petitioner did not keep any books and records of his businesses. He operated the businesses under friends' names who in turn maintained books and records and filed income tax returns for these businesses. On October 13, 1983, petitioner was arrested during an undercover sting operation while attempting to purchase 8 kilos of cocaine from an undercover DEA agent at a cost of $ 20,000 per kilo. Petitioner was charged with attempting to possess cocaine with intent to redistribute, possessing a firearm during the commission of a felony, and possessing a firearm after a former conviction. At the time of petitioner's arrest, he had two guns and approximately $ 100,000 in his possession. However, petitioner did not have any drugs in his possession at the time he was arrested. On the day of petitioner's arrest, Federal agents searched his residence and seized personal property. The property seized from petitioner's residence included customized jewelry worth approximately $ 249,000, electronic equipment, golf clubs, musical instruments, mobile telephones, one *29 mobile home, furs, several firearms, narcotics paraphernalia, and other miscellaneous items. Federal agents located and seized cash receipts in excess of $ 100,000 for cash purchases made during the period from January 1, 1983, through October 13, 1983. During the search of petitioner's residence, Federal agents also located and seized one metal funnel containing powdery residue. The DEA South Central Laboratory at Dallas, Texas, determined that the powdery residue was approximately .25 milligrams of cocaine. In addition, Federal agents seized one metal sifter containing powdery residue. The DEA South Central Laboratory at Dallas, Texas, determined that the powdery residue was 3 milligrams of cocaine. The seized property was placed in the custody of the Tulsa Police Department. Subsequently, respondent seized petitioner's property from the Tulsa Police Department pursuant to section 6331 for nonpayment of past due Federal income taxes. The value of the seized property was at least $ 300,000. Cocaine which has not been "cut" costs more than cocaine which has been cut. Cutting is a procedure in which a dealer dilutes the cocaine by adding adulterants to increase the weight, *30 thereby decreasing its potency. In Tulsa, the street value of an ounce of relatively pure cocaine ranged from $ 2,000 to $ 2,800 during 1983. There are 16 ounces in a pound and approximately 2.2 pounds in a kilo. The average selling price to a wholesale dealer for a pound of cocaine ranged from approximately $ 32,000 to $ 44,800. The price varied depending on the quality of the cocaine. Subsequent to petitioner's arrest, Internal Revenue Agent Bruce Waits (Waits) and James K. Frazer (Frazer), special agent with the Internal Revenue Service, Criminal Investigation Division, interviewed Dunn regarding petitioner's involvement in cocaine trafficking. During this interview, Dunn stated that petitioner had purchased 42 kilos of cocaine from two individuals who had obtained it from a storage building at a price of approximately $ 1,000 per kilo in January 1983. On the basis of information received from Dunn, together with information from the DEA and Tulsa Police Department, respondent concluded that petitioner had unreported income from the sale of cocaine during 1983. Petitioner did not provide any books or records essential to the determination of his correct tax liability for *31 the 1983 taxable year. Accordingly, respondent's revenue agent reconstructed petitioner's income to determine his tax liability. Internal Revenue Agent Waits determined petitioner's gross receipts and costs to reconstruct his taxable income for the 1983 taxable year. The determination of gross receipts was based on the retail street value of the 42 kilos purchased for resale during January 1983. Waits felt that the method used to reconstruct petitioner's income was the most effective method since petitioner made purchases on a cash basis and Waits only had access to receipts and documents seized from petitioner's home. Waits determined that petitioner's gross receipts totaled $ 3,696,000. In arriving at this figure, Waits multiplied 42 kilos by 2.2 pounds per kilo to arrive at 92.4 pounds of cocaine. Waits then determined that the retail street value of 1 pound of cocaine was $ 40,000 in Tulsa during 1983, based on a retail street value for 1 ounce of $ 2,500. Waits then multiplied the $ 40,000 figure by 92.4 to arrive at gross receipts in the amount of $ 3,696,000. This computation was based on the assumption that the cocaine was sold in an "uncut" form. Although respondent's *32 agent had information establishing that petitioner had cut the cocaine, he elected to compute the gross income by using the conservative figure. In determining petitioner's taxable income, petitioner was allowed a deduction in the amount of $ 42,000 for the cost of goods sold. Petitioner was also allowed an exemption for himself in the amount of $ 1,000 with a resulting income tax due of $ 1,815,973. Respondent's agent added to this figure a self-employment tax in the amount of $ 3,337.95 to arrive at a total tax liability of $ 1,819,310.95. On October 14, 1983, Special Agent Frazer terminated petitioner's 1983 taxable year and made a termination assessment against him in the amount of $ 1,819,310.95 for the period from January 1, 1983, to October 13, 1983, pursuant to section 6851. Respondent's agent based the termination assessment upon the following factors: 1) Petitioner was arrested on October 13, 1983, while attempting to purchase 8 kilos of cocaine from an undercover Alcohol, Tobacco and Firearms agent; 2) several additional charges were pending against petitioner; 3) petitioner was in possession of more than $ 100,000 in cash at the time of his arrest; 4) petitioner had *33 not filed an income tax return since 1979 [3] and did not make any estimated tax payments for the 1983 taxable year; 5) during 1983, petitioner sold illegal narcotic drugs; and 6) while petitioner was in custody, he refused to answer respondent's questions regarding his tax liability. Respondent mailed his statutory notice of deficiency for the 1983 year to petitioner on June 14, 1984, in the amounts set forth above. In 1983, petitioner was convicted of possession with intent to distribute a controlled substance in violation of 21 U.S.C. section 841(a)(1) (1984), attempt and conspiracy to distribute a *34 controlled substance in violation of 21 U.S.C. section 846 (1984), aiding and abetting in violation of 18 U.S.C. section 2 (1979), and engaging in a continuing criminal enterprise in violation of 21 U.S.C. section 848 (1984). Petitioner's conviction was the result of drug trafficking during 1983. Petitioner was also convicted of violating various Federal firearm statutes. The United States District Court for the Northern District of Oklahoma entered a Judgment and Probation/Commitment Order against petitioner on May 21, 1984. Petitioner was sentenced to terms ranging from 2 to 50 years' imprisonment. On May 1, 1984, the United States District Court for the Northern District of Oklahoma entered an Order of Forfeiture pursuant to 21 U.S.C. section 848(a)(2) against petitioner for his conviction of engaging in a continuing criminal enterprise. In accordance with the Order, $ 97,916 in cash, one tractor, eight assorted firearms, and petitioner's residence were forfeited to the United States. On December 6, 1984, respondent sold the property seized at a public auction as provided by section 6335. The net proceeds of the sale totaled approximately $ 40,000. OPINION A. Preliminary *35 Issue
Preliminarily, we must address petitioner's constitutional arguments raised on brief. In his brief, petitioner asserts that his constitutional rights under the Fifth Amendment were violated because he was not afforded counsel to represent him in this proceeding. [4] The right to counsel under the Sixth Amendment extends only to criminal prosecutions and does not apply to civil proceedings. Cupp v. Commissioner, 65 T.C. 68, 85-86 (1975), affd. without opinion 559 F.2d 1207 (3d Cir. 1977). Moreover, no right to counsel is subsumed under the Fifth Amendment privilege against self-incrimination. Hartman v. Commissioner, 65 T.C. 542, 543 (1975). Petitioner was afforded a full opportunity to be heard and represent himself at trial pursuant to Rule 24(b) and, therefore, his constitutional rights have not been violated. [5]
*36 Petitioner also argued on brief that his constitutional rights were violated because his pro se appearance prejudiced his case. In support of this argument, petitioner argued that there were several witnesses he wanted to testify on his behalf, but he was unaware that he had to request the Court to issue subpoenas requiring the witnesses to attend the trial and provide testimony. Petitioner also argued that his case was prejudiced because witnesses were present in the courtroom during the testimony of another witness. Petitioner argued that he was unaware that the parties could have requested the exclusion of witnesses from the courtroom during other witnesses' testimony. A pro se appearance before the Tax Court, "whether by choice or circumstance, does not lessen the impact of applicable rules." Wallis v. Commissioner, 357 F.2d 313, 314 (10th Cir. 1966), affg. a Memorandum Opinion of this Court. Accordingly, petitioner's constitutional rights were not violated. B. Substantive Issues
1. Deficiency determination
Next, we must decide whether petitioner had unreported income of $ 3,696,000 for 1983 from the illegal sale of cocaine. Gross income includes all income *37 from whatever source derived. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 99 L. Ed. 483, 75 S. Ct. 473 (1955). Respondent's deficiency determination is presumptively correct and the burden of proof is on petitioner to show that it is incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). As a general rule, we will not look behind a deficiency notice to examine the evidence used in making the deficiency determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). However, with regard to unreported illegal income, if the taxpayer shows that respondent's determination is arbitrary or erroneous, the Commissioner will then have the burden of going forward with evidence to establish the existence and amount of unreported income. Jones v. Commissioner, 903 F.2d 1301, 1304 (10th Cir. 1990), affg. in part (on this issue) and revg. in part a Memorandum Opinion of this Court; Ruidoso Racing Association, Inc. v. Commissioner, 476 F.2d 502, 507-508 (10th Cir. 1973), affg. in part and remanding in part a Memorandum Opinion of this Court. [6] "[P]roof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." Jones *38 v. Commissioner, supra at 1304 (citing United States v. Janis, 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976)). In Jones v. Commissioner, supra, the court held that the taxpayer had failed to satisfy his evidentiary burden in contesting the Commissioner's assessment which would have caused "the presumption of correctness afforded the Commissioner's assessment [to] disappear and the government would [have been] required to prove the accuracy of its determination." 903 F.2d at 1304. The taxpayer introduced almost no real evidence to prove that the Commissioner's assessment was erroneous other than attempts to disclaim any involvement with narcotics trafficking. 903 F.2d at 1303. Accordingly, the court concluded that the taxpayer failed to prove that the Commissioner's *39 deficiency determination was incorrect, nor did he prove that the Commissioner lacked factual basis for his assessment. Petitioner here argues that he was not involved in narcotics trafficking and did not receive any income therefrom. However, for reasons hereinafter discussed, we find that respondent had a basis for the determination in the notice of deficiency, and the assessment was not lacking in foundation. The revenue agent testified in detail about the factual basis for his computation of unreported income attributable to sales of cocaine. He based his computation on statements from informants and information obtained from the DEA and the Tulsa Police Department. Although the revenue agent's testimony regarding the informants' statements is hearsay and not admissible to establish that petitioner had unreported income from the sale of cocaine, such evidence may be considered in deciding whether respondent acted arbitrarily in formulating the deficiency. Jones v. Commissioner, supra, at 1303 n.2; Avery v. Commissioner, 574 F.2d 467, 468 (9th Cir. 1978), affg. per curiam a Memorandum Opinion of this Court; Dellacroce v. Commissioner, 83 T.C. 269, 284 (1984). *40 Petitioner argued on brief that the evidence does not support respondent's deficiency determination. Petitioner argued that Dunn's statement to investigators regarding petitioner's narcotics trafficking was the critical evidence supporting respondent's deficiency determination. However, Dunn testified that he never saw petitioner in possession of 42 kilos of cocaine. When respondent's counsel asked Dunn whether petitioner was engaged in the sale of narcotics during 1983, he responded "You would have to ask him." Dunn testified that the only investigator he remembered speaking with the DEA Agent Chism. Moreover, Dunn testified that he was not present when petitioner purchased cocaine during 1983. Rather, Dunn testified that Grant informed him that petitioner had purchased a large quantity of cocaine during 1983. When petitioner asked Dunn during redirect examination whether he had spoken to respondent's agents regarding petitioner's purchase of 42 kilos, he testified that "[he didn't] even remember who it was." Subsequently, Dunn stated that he did not remember speaking with any of respondent's agents. We observed Dunn on the witness stand and do not consider his testimony *41 credible. Dunn was generally unresponsive and uncooperative. At the time of the trial, Dunn was serving two life terms for committing a double homicide and did not have an interest in providing testimony against his former business associate. When Dunn provided information to Federal agents, his cooperation was likely inspired by the thought of leniency regarding his own transgression. Accordingly, we are reluctant to give much weight to Dunn's current testimony. The record reflects that during 1983, petitioner was engaged in the illegal trafficking of cocaine and received substantial income in connection with his drug trafficking activities. On the day of petitioner's arrest, narcotics paraphernalia and a small quantity of cocaine were seized from petitioner's residence. Petitioner's conviction for cocaine trafficking with respect to 1983 and his accumulation of wealth support respondent's deficiency determination. Petitioner used fictitious names in an attempt to conceal his activities. He assumed the name and Social Security number of an unrelated party. Additionally, petitioner attempted to conceal his wealth by purchasing property for cash under friends' names. We believe *42 that respondent's deficiency determination was based on evidence of drug dealing activity and did not represent a "naked assessment." Petitioner has failed to show that respondent's determination was arbitrary. Aside from petitioner's implausible and uncorroborated testimony that his accumulation of wealth resulted from ownership of a night club and body shop, petitioner did not offer any evidence establishing that he was not involved in cocaine trafficking during 1983. Petitioner did not offer any evidence showing that respondent's assessment was arbitrary other than his self-serving assertions that he was not involved in cocaine trafficking. The evidence placing petitioner in the illegal drug trade contradicts and outweighs petitioner's testimony. Petitioner has also failed to prove that respondent's determination was erroneous. A taxpayer has the duty to maintain adequate records to enable him to file a tax return. Sec. 6001. Where, as here, a taxpayer has not kept any records, section 446(b) authorizes the Commissioner to compute income in accordance with a method which clearly reflects income. It is proper to employ an indirect method to calculate income where the method *43 used is reasonable. Holland v. United States, 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). [7] The reconstruction need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, supra; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Respondent is given some latitude in determining which method of reconstruction to apply in cases involving an illegal activity where the taxpayer has neither filed a return nor maintained any records. Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). Where a taxpayer fails to maintain records, courts have approved of the Commissioner's reconstruction of a taxpayer's gross receipts and costs to determine taxable income. Jones v. Commissioner, supra at 1303. See Anson v. Commissioner, 328 F.2d 703, 705-706 (10th Cir. 1964). In the instant case, petitioner did not provide *44 any books, records, or other evidence establishing that his wealth resulted from any legitimate businesses nor did he provide any assistance to respondent in determining petitioner's taxable income for the 1983 taxable year. Even if he had shown the income to be from legal sources, petitioner has failed to report any income. Internal Revenue Agent Waits determined petitioner's gross receipts and costs to reconstruct his taxable income for the 1983 taxable year. Waits determined that petitioner's gross receipts totaled $ 3,696,000. This figure was based on a retail street value of $ 2,500 for 1 ounce of cocaine. Although DEA Agent Glenn Chism testified that the street value for an ounce of cocaine ranged from $ 2,000 to $ 2,800, respondent is under no obligation to assume the lowest price supported by the evidence. [8]
We note that there are some inconsistencies between Dunn's account of the facts and Grant's account. Dunn informed investigators that petitioner *45 purchased 42 kilos from the home of an associate. Grant informed investigators that petitioner purchased approximately 45 kilos from the mini-storage. Petitioner failed to present any evidence to show that he did not purchase either 42 or 45 kilos of cocaine. We find that petitioner realized unreported income during the 1983 taxable year from the sale of at least 42 kilos of cocaine. Respondent's deficiency determination was based on the assumption that petitioner sold 42 kilos purchased during January 1983 by the time he was arrested on October 13, 1983. At the time of his arrest, petitioner was attempting to purchase an additional 8 kilos of cocaine for $ 20,000. It is unlikely that petitioner would have purchased an additional 8 kilos of cocaine unless he had sold the majority of the 42 kilos purchased in January. Petitioner did not meet the burden of proving that the notice was erroneous. Accordingly, we find that petitioner had unreported taxable income during 1983 in the amount of $ 3,696,000. 2. Self-employment tax
A self-employment tax is imposed on income earned from self-employment. Sec. 1401. Respondent determined that petitioner was liable for self-employment *46 tax in the amount of $ 3,337.95. Petitioner has the burden of proving that the determination is erroneous. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Since petitioner presented no proof on this issue, we sustain respondent's determination. 3. Additions to tax
Respondent also determined additions to petitioner's tax pursuant to sections 6651(a)(1), 6653(a)(1), 6653(a)(2), and 6654. Petitioner has the burden of proving that the additions to tax were wrongly determined by respondent. Rule 142(a). Section 6651(a)(1) provides a 5 percent per month addition to tax (not to exceed 25 percent) for failure to file a return unless such failure was due to reasonable cause and not willful neglect. Petitioner failed to file a 1983 Federal income tax return. Moreover, petitioner concedes that he has never filed a Federal income tax return. Petitioner contends that he has not filed income tax returns because he is a "nontaxpayer." Petitioner has not presented any evidence establishing that his failure to file was due to reasonable cause. Consequently, we sustain respondent's determination that petitioner is liable for the section 6651(a)(1) addition to tax. Respondent *47 also determined that petitioner is liable for additions to tax under section 6653(a)(1) and (2). This section provides for additions to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Because petitioner failed to show that any part of the deficiency was not due to negligence or intentional disregard of the rules, we must sustain the addition to tax under section 6653(a). Respondent also determined that petitioner is liable for the section 6654 addition to tax for failure to pay estimated income tax. Section 6654 imposes an addition to tax in the case of any underpayment of estimated tax by an individual. The addition to tax under section 6654 as to the year at issue is mandatory, unless the taxpayer can place himself within one of the exceptions provided therein. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Petitioner presented *48 no arguments at trial, or on brief, relating to the section 6654 addition to tax. Accordingly, respondent's determination is sustained. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court's Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 1,819,310.95.↩
2. The Tulsa Police Department attempted to discuss this transaction with Hilderbrand. However, Hilderbrand had suffered a mental breakdown and was not able to answer any questions. Investigators interviewed Hilderbrand's son, who explained that he had been checking mini-storage lockers and found the cocaine in an unlocked locker.↩
3. Respondent located a 1979 income tax return filed in Memphis, Tennessee, bearing petitioner's name and Social Security number. However, petitioner has never filed an income tax return. The return located by respondent was filed by Jesse L. Jones, a fireman for the City of Memphis. Jesse L. Jones, who is unrelated to petitioner, was unaware that his name and social security number had been assumed by petitioner.↩
4. Petitioner was originally represented by an attorney, Edward L. Munson, who filed the pleadings in this case. On March 28, 1985, we granted Munson's motion to withdraw as attorney of record.↩
5. See Friend v. Commissioner, T.C. Memo 1990-361; Dixon v. Commissioner, T.C. Memo 1986-563; Bergman v. Commissioner, T.C. Memo 1985-256↩.
6. Since this case is appealable to the Tenth Circuit, barring a stipulation to the contrary, we will follow opinions of the Tenth Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940, 30 L. Ed. 2d 254, 92 S. Ct. 284↩ (1971).
7. See also Blair v. Commissioner, T.C. Memo 1988-581; Denison v. Commissioner, T.C. Memo 1984-185↩.
8. See Graff v. Commissioner, T.C. Memo 1986-550↩.